IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWYERS FUNDING GROUP, LLC : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 14-2962 |
| THEODORE W. WHITE, JR., ET AL. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                **MARCH  3 , 2015**

      Presently before the Court is the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants, Brian Forrest McCallister, Esquire and The McCallister Law Firm, P.C. (collectively the "McCallister Defendants") (ECF No. 16).  For the following reasons, the Motion will be granted in part and denied in part.

**I.     BACKGROUND**

      This is a dispute in which Plaintiff seeks recovery of its investment interest in certain litigation proceeds that Defendant, Theodore W. White, Jr., is entitled to as a result of the settlement of a civil rights lawsuit.  Plaintiff alleges that Defendants failed to remit the monies due under a purchase agreement following settlement of the underlying litigation.  The McCallister Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6).

      **A.     Factual Background**

      At all times material, Plaintiff was engaged in the business of acquiring investments in anticipated monetary recoveries in pending civil litigation matters.  (Pl.'s Am. Compl. ¶ 8, ECF No. 3.)  Based upon a number of factors including valuation of the claim, the likelihood of recovery, and the estimated dollar amount of recovery, it will lend money to a civil plaintiff and

in the event of a monetary recovery, Plaintiff receives a return on its investment plus interest and fees as set forth in a purchase agreement.  (*Id*. at ¶¶ 10-11.)  Plaintiff does not retain any right to control the litigation by its investment.  (*Id*. at ¶ 11.)

In 2005, White initiated a civil rights action against various defendants, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Western District of Missouri.  *See White v. McKinley*, No. 05-0203, 2009 WL 813001 (W.D. Mo. Mar. 26, 2009), *aff'd*, 605 F.3d 525 (8th Cir. 2010), *cert denied*, 131 S. Ct. 799 (2010).  Following a jury trial, a verdict was returned in favor of White in the sum of $14 million in compensatory damages plus $2 million in punitive damages.[1]  White eventually settled the underlying litigation for the sum of $15,500,000 on or around June 15, 2011.  (Am. Compl. at ¶ 17.)  For purposes of the underlying litigation, White was represented by the McCallister Defendants and Defendants, Michael I. Kanovitz, Esquire and Loevy & Loevy (collectively the "Elgron Defendants").  (*Id*. at ¶¶ 11, 13-16.)  Defendant Brian McCallister, Esquire is an attorney practicing law in the State of Missouri, with The McCallister Law Firm, P.C. located in Kansas City, MO.  (*Id*. at ¶ 3.)  Defendant Michael Kanovitz, Esquire is an attorney practicing law in the State of Illinois, with the law firm of Loevy & Loevy located in Chicago, IL.  (*Id*. at ¶ 4.)

On July 22, 2009, during the pendency of White's litigation, Plaintiff and White entered into a Purchase Agreement wherein Plaintiff agreed to advance White the sum of $50,000 in exchange for a promised return of $147,500, in the event that White successfully recovered a monetary settlement or judgment.  (*Id*. at ¶¶ 11-12.)  Under the Purchase Agreement, interest began to accrue after December 31, 2011, at a rate of 3.5% compounded monthly until repayment was made to Plaintiff.  (*Id*. at ¶ 12.)  On February 22, 2010, Plaintiff and White

---

[1] The factual circumstances giving rise to the underlying litigation are set forth in the Eighth Circuit's Opinion at 605 F.3d at 528-31.

2

entered into an amended Purchase Agreement, whereby Plaintiff agreed to advance White the additional sum of $19,000, in exchange for a modified total return of $203,500. (*Id*. at ¶ 13.) The February 22, 2010 Purchase Agreement modified only the monetary purchase and repayment terms; all other terms and conditions set forth in the July 22, 2009 Purchase Agreement remained in full force and effect.  The Purchase Agreement has a forum selection clause that provides that disputes concerning the agreement "shall be brought in a court of competent jurisdiction in Philadelphia County, Pennsylvania." (Purchase Agreement 5, Am. Compl. Ex. A, ECF No. 1-1.)[2]

Upon executing the Purchase Agreement on July 22, 2009, McCallister signed an Attorney Acknowledgement of Lien, which was attached to the Purchase Agreement as an Exhibit. (Am. Compl. ¶ 14.)  With regard to the subsequent amended Purchase Agreement, both McCallister and Kanovitz executed an "Acknowledgement of Lien by Legal Counsel," which was appended to the February 22, 2010 Purchase Agreement. (*Id*. at ¶¶ 15-16.)  Specific promises were made by McCallister under the Attorney Acknowledgements to secure the interests of Plaintiff in any recovered judgment or settlement proceeds.  Following settlement of the underlying litigation, Defendants allegedly failed to remit payment of the monies due under the Purchase Agreement to Plaintiff. (*Id*. at ¶ 17, 19-20.)

### B. Procedural Background

Plaintiff initiated this litigation on May 23, 2014. (ECF No. 1.)  The Amended Complaint was filed shortly thereafter, on June 6, 2014. (Am. Compl.)  Plaintiff brings causes of action for breach of contract (Counts I-III), negligence (Counts IV-V), and breach of fiduciary duty (Counts VI-VII).  On September 3, 2014, the Elgron Defendants filed an Answer with

---

[2] Plaintiff neglected to file the Exhibits referenced in its Amended Complaint.  However, copies of these Exhibits were filed with Plaintiff's initial Complaint. (*See* ECF No. 1-1.)

affirmative defenses (ECF No. 14).  The McCallister Defendants responded to the Amended Complaint by filing the instant Motion to Dismiss.  (ECF No. 16.)  Upon Motion of the Plaintiff (ECF No. 33), we permitted Plaintiff to serve the Amended Complaint on White via first class mail (ECF No. 35).  After perfecting service, White failed to respond to Plaintiff's Amended Complaint and Plaintiff requested the entry of a default.  (ECF No. 36.)  On February 5, 2015, White filed a Notice of Filing Chapter 7 Petition under the United States Bankruptcy Code.[3] (Notice of Filing Ch. 7 Pet., ECF No. 37.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

A complaint may be dismissed pursuant to Rule 12(b)(2) where the Court lacks personal jurisdiction over the moving defendant.  In deciding a motion under Rule 12(b)(2), the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted).  In order to "survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker*, 292 F.3d at 368).  "[T]he plaintiff need only establish a prima facie case of personal jurisdiction" to defeat the motion to dismiss.  *Id.* (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

### B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3)

A party seeking dismissal of a case under Rule 12(b)(3) challenges the venue of the

---

[3] White's bankruptcy petition operates only to stay this action as to him under 11 U.S.C. § 362(a).  *Forcine Concrete & Const. Co., Inc. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 522 (E.D. Pa. 2010) (citing *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997); *see also McCartney*, 106 F.3d at 509-10 ("it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors. . .or others with a similar legal or factual nexus to the. . .debtor.") (citation omitted).

litigation.  "In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).  "[W]here both the original venue and the requested venue are proper," § 1404 provides for the transfer of a case, while § 1406 applies "where the original venue is improper and provides for either transfer or dismissal of the case."  *Id*.  Proper venue is determined by "the location of those events or omissions giving rise to the claim," not "the defendant's contacts with a particular district."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (internal quotation marks omitted).  In a diversity case, venue is proper if one of three factors set forth in 28 U.S.C. § 1391(b) is met.  Section 1391 does not require the best forum; it also does not give license to a plaintiff to bring suit in an unlimited number of forums.  *Leone v. Cataldo*, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (citing *Cottman*, 36 F.3d at 294).

        C.      **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).   Nevertheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino*

*Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997). "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

## III. DISCUSSION

The McCallister Defendants raise two overriding issues in their Motion. First, they challenge, pursuant to Rules 12(b)(2) and (3), the jurisdiction and venue of this Court to hear this suit. Second, they argue that, pursuant to Rule 12(b)(6), Plaintiff has failed to state tort based claims upon which relief can be granted.

### A. The Jurisdictional and Venue Challenge

The McCallister Defendants seek dismissal of this suit for lack of personal jurisdiction. They alternatively argue that if personal jurisdiction is found, the case should be dismissed on grounds of improper venue. Absent from the McCallister Defendants' Motion is any discussion of the forum selection clause contained in the Purchase Agreement. Plaintiff argues that this forum selection clause is dispositive of both the jurisdictional and venue challenges.

"[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, --- U.S. ---, 134 S.Ct. 568, 581 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)). A forum selection clause is presumptively valid and must be enforced absent a showing that "enforcement of the clause would violate a strong public policy of the forum." *In Re Exide Tech.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) (citations omitted). Where a forum selection clause is present, "analysis of the contacts with the forum

state is inappropriate.  Instead, the court must consider the validity and effect of the forum selection clause in order to determine if there has been a consent to *in personam* jurisdiction." *Provident Mut. Life Ins. Co. of Phila. v. Bickerstaff*, 818 F. Supp. 116, 118 (E.D. Pa. 1993) (citations omitted).  The McCallister Defendants do not challenge the validity of the forum selection clause contained within the Purchase Agreement.[4]  Accordingly, our analysis turns to whether the Acknowledgement of Lien executed by Mr. McCallister binds the McCallister Defendants to the forum selection clause contained within the Purchase Agreement.

"It is widely accepted that nonsignatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *AAMCO Transmissions, Inc. v. Romano*, --- F. Supp. 2d ---, 2014 WL 4105986, at *5 (E.D. Pa. 2014) (citations omitted) (bracketed text in original).  Under the prevailing law of the Third Circuit, a nonsignatory party may be bound by "a forum selection clause in a contract if the party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound."  *Id.* (citing *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010)); *see also Jordan v. SEI Corp.*, No. 96-1616, 1996 WL 296540, at *6 (E.D. Pa. June 4, 1996) ("Forum selection clauses bind nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause.").  "Courts have deemed a third party's conduct to be 'closely related' to a contractual

---

[4] The McCallister Defendants do not make any argument regarding the forum selection clause in their Motion.  However, they do argue that "[t]he alleged signing of the Acknowledgement of Lien is not sufficient to establish general jurisdiction," in the context of a sufficient contacts with the forum district analysis.  (Defs.' Br. 5, ECF No. 16-2.)  As noted by the court in *Provident Mutual Life Insurance Company of Philadelphia*, the sufficient contacts analysis is not appropriate in light of the forum selection clause.  818 F. Supp. at 118.  And as discussed in greater detail *infra*, the totality of circumstances present here binds the McCallister Defendants to the forum selection clause.

relationship or dispute—and thus bound the third parties to forum selection clauses—in a wide variety of situations." *Synthes, Inc. v. Emerge Med., Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (collecting cases).  Ultimately, whether a nonsignatory should be bound by a forum selection clause depends upon a "common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Id.* (citation omitted).

Two recent cases from the District of New Jersey present facts almost identical to the facts in the instant case.  *See Cambridge Mgmt. Grp., LLC v. Baker*, No. 12-3577, 2013 WL 1314734 (D.N.J. Mar. 28, 2013); *US Claims v. Baker*, No. 12-2231, 2012 WL 6725826 (D.N.J. Dec. 27, 2012).  Both *Cambridge Management Group, LLC* and *US Claims* involved entities engaged in the business of purchasing investments in anticipated returns in personal injury suits similar to the Plaintiff's.  These entities filed separate suits against the same personal injury claimant and his attorney seeking to recover the investment proceeds allegedly due following the settlement of an underlying personal injury action.  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *1; *US Claims*, 2012 WL 6725826 at *1.  The underlying personal injury action was litigated in Georgia.  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *4;  *US Claims*, 2012 WL 6725826 at *2.  In both instances, the personal injury claimant's attorney executed an attorney acknowledgement of lien associated with the purchase agreement that the claimant entered into. *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *4; *US Claims*, 2012 WL 6725826 at *2.  In both cases, the claimant's attorney sought dismissal of the suits on jurisdictional grounds, arguing that the attorney did not expressly agree to be bound by a forum selection clause that vested jurisdiction in New Jersey.  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *7; *US Claims*, 2012 WL 6725826 at *5.  The court looked to the purchase agreement and the attorney

acknowledgement, observing that the attorney acknowledgement contained an express agreement by the attorney to hold any proceeds rightfully due to the plaintiff.  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *9-11; *US Claims*, 2012 WL 6725826 at *6-7.  The court also noted the attorney agreed to distribute the proceeds to the plaintiff in accordance with the terms of the purchase agreement, and that the purchase agreement and the attorney acknowledgement represented an entire agreement.  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *9-11; *US Claims*, 2012 WL 6725826 at *6-7.  Based upon the totality of the circumstances, the court found that "[b]ecause it is clear that the [attorney defendants'] conduct is closely and directly related to the contractual relationship between the [underlying plaintiffs] and [the litigation funder], the choice of forum and law clause and the waiver of personal jurisdiction contained in the [purchase agreement] are applicable to the [attorney defendants] in this case."  *Cambridge Mgmt. Grp.*, 2013 WL 1314734 at *11; *see also US Claims*, 2012 WL 6725826 at *7.

In this case, the Purchase Agreement explicitly names Brian McCallister as White's attorney in the underlying litigation.  The Purchase Agreement provides that White "shall direct [the McCallister Defendants] to pay to [Plaintiff] the full Purchased Amount from the Proceeds recovered by [White] under the Lawsuit."  (Purchase Agreement 2.)  The Agreement further provides that:

> Simultaneously with the execution of this Agreement, [White] has provided [Plaintiff] with (I) an executed Authorization, in the form of Exhibit "A" attached hereto, in which [Plaintiff] authorizes [the McCallister Defendants] to deliver to [Plaintiff the funds due and owing to Plaintiff]; and (II) an executed Acknowledgement from [the McCallister Defendants], in the form of Exhibit "B" attached hereto, acknowledging [the McCallister Defendants'] receipt of the Authorization.

(*Id*.)  The bottom of each page of the Purchase Agreement reflects that the Agreement is eight pages in length, with Exhibits "A" and "B" being numbered "Page 7 of 8" and "Page 8 of 8,"

respectively.  Brian McCallister is noted to have reviewed the terms of the Purchase Agreement with his client.  The forum selection clause within the Agreement states that "[a]ny dispute between [Plaintiff] and any party other than [White]. . .shall be brought in a court of competent jurisdiction in Philadelphia County, Pennsylvania."  (*Id*. at 5.)

The Purchase Agreement contains a number of provisions reflecting agreements to perform made by the McCallister Defendants.  For example, the McCallister Defendants expressly agreed "not to use the Purchase Price or any portion thereof to pay expenses of litigation."  (*Id*. at 3)  The Authorization signed by White provides that McCallister is authorized to pay to Plaintiff the funds due and owing to Plaintiff at the conclusion of the underlying litigation, and further that the McCallister Defendants "shall pay to [Plaintiff] the entire amount of the Proceeds at the time of their distribution."  (*Id*. at 7.)  The Acknowledgement executed by Brian McCallister sets forth certain agreements to perform as follows:

> I, Brian McCallister, acknowledge my representation of Theodore W. White, Jr. ("Seller"), plaintiff in the [underlying litigation] and receipt of authorization to withhold amounts due to Lawyers Funding Group, L.L.C. ("LFG") pursuant to that certain Purchase Agreement dated the 22nd day of July, 2009 (the "Purchase Agreement"), and to hereby agree and warrant as follows:
>
> 1.   Attorney *shall* notify and make distribution to LFG of the Purchased Amount at the time said Proceeds are received from a verdict, judgment, award or settlement at the time that the Proceeds are distributed to Seller without further authorization from Seller.
>
> 2.   In the event attorney is discharged as counsel from this claim or lawsuit, I shall immediately notify Lawyers Funding Group that I will no longer be able to protect their interest and shall have no further liability except to provide the identity of the plaintiff, Seller's new attorney if known.

(*Id*. at 8) (emphasis added).  Upon execution of the amended Purchase Agreement on February 22, 2010, Brian McCallister signed an "Acknowledgement of Lien by Legal Counsel."  (Am. Compl. Ex. E.)  The February 22, 2010 Acknowledgement provides: "I, acknowledge this

assignment on behalf of my client, the above referenced [White] made to [Plaintiff] in this Amended Purchase Agreement and pursuant to the authorization of my client in the original Agreement I agree to withhold from distribution of proceeds and pay the Interest Amount due [Plaintiff]." (*Id.*)

These circumstances reveal a close and direct relationship between the McCallister Defendants and the Agreement, which justifies subjecting them to the forum selection clause. The terms of the Purchase Agreement make clear the involvement of the McCallister Defendants with the Agreement. Furthermore, it was entirely foreseeable that the McCallister Defendants would be bound by the forum selection clause upon execution of the Attorney Acknowledgements in July 2009 and February 2010. The Purchase Agreement places upon the McCallister Defendants specific duties, which they expressly agreed to perform. Implicit within the agreement to pay to Plaintiff monies due and owing upon the conclusion of the underlying litigation is an agreement to be bound by the forum selection clause. The McCallister Defendants are indeed included within the scope of the forum selection clause, as it expressly refers to a dispute concerning the Agreement between Plaintiff and any party other than White— *i.e.* the McCallister Defendants. "Under these circumstances, the fact that the [McCallister] Defendants did not sign the [Purchase Agreement] itself does not render the choice of law and forum clause contained [therein] unenforceable against them." *Cambridge Mgmt. Grp., LLC*, 2013 WL 1314734, at *11.

The actions of the Elgron Defendants suggest further that it was the intent of White *and* his counsel in the underlying litigation to be bound by the forum selection clause. Though their involvement with the Purchase Agreement is limited to executing the February 22, 2010 Acknowledgement of Lien, the Elgron Defendants did not challenge the jurisdiction of this Court

and instead filed an Answer. This failure to challenge jurisdiction tacitly recognizes the effect of the forum selection clause upon *all* Defendants. Since the litigation is proceeding in this Court against the other Defendants, it would make little sense to order Plaintiff to litigate identical claims against separate Defendants in separate districts. *See Cottman Transmission Sys., Inc.*, 36 F.3d at 296 (bracketed text original) (citation omitted) ("[The court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places."). We are satisfied, based upon the totality of the circumstances, that the forum selection clause applies to the McCallister Defendants. Accordingly, we will retain jurisdiction to hear Plaintiff's claims against them.

In light of the existence of the forum selection clause, and its appropriate application to the McCallister Defendants, venue is also proper here. Where "a forum selection clause exists, its effect on the issue of appropriateness of venue is essentially identical to its effect on the question of jurisdiction." *Provident Mut. Life Ins. Co. of Phila.*, 818 F. Supp. at 119 (citations omitted); s*ee also SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 443 (E.D. Pa. 2014) (citations omitted) ("We have previously recognized that a defendant may consent to personal jurisdiction and venue through the execution of a valid forum selection clause."); *DePuy Synthes Sales, Inc. v. Edwards*, 23 F. Supp. 3d 472, 480 (E.D. Pa. 2014) (same); *TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 533-34 (E.D. Pa. 2010) (same); *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) ("[I]t is inappropriate to dismiss pursuant to 28 U.S.C. § 1406" where a forum selection clause renders venue proper). Indeed, a party's agreement to a forum selection clause constitutes a waiver of any opposition to improper venue. *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998).

In light of the form selection clause, it would be inappropriate to dismiss this action pursuant to § 1406. As discussed above, the McCallister Defendants' connection to, and involvement with, the Purchase Agreement operates as implicit acquiescence to be bound by the forum selection clause. Based upon the controlling effect of the forum selection clause at issue here, jurisdiction and venue are proper in this Court. Accordingly, the McCallister Defendants' Motions to dismiss under Rule 12(b)(2) and 12(b)(3) will be denied.

   B.   **The Failure to State a Claim Challenge**

The McCallister Defendants next contend that Plaintiff fails to state a claim for negligence and breach of fiduciary duty. Initially, the McCallister Defendants argue that the gist of the action doctrine bars both the negligence and breach of fiduciary duty claims. In the alternative, they argue that Plaintiff fails to state a claim for either legal malpractice or breach of fiduciary duty. The McCallister Defendants also seek dismissal of Plaintiff's request for attorneys' fees under the Purchase Agreement.

   1.   *The Gist of the Action Doctrine Applied to Plaintiff's Tort Claims*[5]

"The gist of the action 'doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'" *Pediatrix Screening, Inc. v. TeleChem Intern., Inc.*, 602 F.3d 541, 548 (3d Cir. 2010) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). "[A] claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and

---

[5] The McCallister Defendants present legal arguments in their Rule 12(b)(6) Motion citing Pennsylvania law. Despite arguing that they are not a parties to the Purchase Agreement (Defs.' Br. 15), we note that the Purchase Agreement contains an express choice of law provision delineating that any dispute concerning its terms "shall be governed by and construed under the laws of the Commonwealth of Pennsylvania." (Purchase Agreement 5.)

13

not by the larger social policies embodied in the law of torts.'" *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002) (quoting *Bash v. Bell Telephone Co.*, 601 A.2d 825, 830 (Pa. Super. Ct. 1992)). Specifically, the gist of the action doctrine serves to bar tort claims arising in four categories: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll, Inc.*, 811 A.2d at 19 (internal quotation marks and citations omitted). The doctrine has yet to be expressly adopted by the Supreme Court of Pennsylvania; however, the Third Circuit, along with the Superior Court of Pennsylvania, has operated under the assumption that the state Supreme Court will eventually do so. *Pediatrix Screening, Inc.*, 602 F.3d at 548; *see also Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).

In this case, there is little doubt that Plaintiff's negligence claim[6] is merely a repackaged breach of contract claim, resting squarely upon the allegation that the McCallister Defendants failed to perform under a contract. Indeed, Plaintiff's negligence claim makes explicit reference to the Attorney Acknowledgement signed by McCallister and his alleged failure to perform under the terms of that agreement. (*See* Am. Compl. ¶¶ 34(a), (e).) The duties allegedly breached arise from the terms of the contract, not social policy, and the success of Plaintiff's negligence claim is dependent entirely upon the terms of the contract. Based upon the gist of the

---

[6] We reject the McCallister Defendants' characterization of Plaintiff's negligence claim as one of legal malpractice. (Defs.' Br. 13-14.) The claim is not premised upon McCallister rendering legal services to a client. Rather, the claim is premised upon the allegation that McCallister, in the role of an escrow agent, negligently failed to pay to Plaintiff out of escrow sums due and owing under the Purchase Agreement.

action doctrine, the claim of negligence and claim of breach of contract cannot coexist in this situation. Plaintiff's claim of negligence will be dismissed.[7]

The same cannot be said at this juncture for the Plaintiff's breach of fiduciary duty claim. Claims for breach of contract and breach of fiduciary duty may coexist "if the fiduciary duty is based on duties imposed as a matter of social policy and if the fiduciary duty is not based on a contractual agreement between the parties." *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008); *see also Bohler-Uddeholm America, Inc.*, 247 F.3d at 105 (internal quotation marks and citation omitted) (affirming decision to submit both breach of contract and breach of fiduciary duty claims to a jury because the "fiduciary duty claim [was] imposed as a matter of social policy rather than by mutual consensus.").

The duties underlying Plaintiff's claim for breach of fiduciary duty go beyond the duties imposed by the Attorney Acknowledgement of Lien. As counsel to White in the underlying litigation, McCallister was duty bound to safeguard the interests of Plaintiff as a third party creditor with a legitimate claim to his client's funds. Such is the policy in the Commonwealth of Pennsylvania, *see* Pa. R. Prof'l Conduct 1.15,[8] as well as in the State of Missouri, *see* Mo. R.

---

[7] Plaintiff requests leave to file an amended pleading to cure any deficiency with regard to its negligence claim. While requests for leave to amend are generally granted in liberal fashion, a court may deny leave to amend where the amendment would be futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Plaintiff has not proffered anything to suggest that granting leave to amend would be anything other than futile.

[8] Under the Pennsylvania Rules of Professional Conduct: "Third parties may have lawful claims against specific funds. . .in a lawyer's control such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client unless the claims are resolved. A lawyer should not unilaterally assume

Prof'l Conduct 4-1.15(e),[9] where McCallister practices law.  Rule 1.15 is subject to a broad interpretation.  CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 4.8 (1986).  And Rule 1.15 "impose[s] on a lawyer certain obligations with respect to a third person's property."  PHILA. ETHICS OP. 95-6 (Apr. 1995).  Within the scope of Rule 1.15, those obligations include the fiduciary obligation to a third party when the attorney is in possession of funds rightfully due to the third party.  *See* WOLFRAM, *supra* ("Because the professional fiduciary rules apply generally, most courts. . .have applied the rules even if the lawyer was technically functioning as a trustee, guardian. . .or holding funds of a third party who was not the lawyer's client."); ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT § 45:106 (2004) ("When a lawyer receives money or property that belongs to a client or a third person, the lawyer must act as a fiduciary for the owner of the money or property."); *Johnstone v. State Bar*, 410 P.2d 617, 618 (Cal. 1966) (per curiam) ("When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party.").

Based upon the foregoing, it is clear that the duties that are the subject of the breach of fiduciary duty claim are imposed upon Defendants beyond the terms of the operative Agreement.  The fiduciary duty at issue flows from McCallister's role as an attorney charged with safeguarding Plaintiff's interests, not from any mutual consensus between Plaintiff and

---

to arbitrate a dispute between the client and the third party."  Pa. R. Prof'l Conduct 1.15 Cmt. (8).

[9] Under the Missouri Rules of Professional Conduct: "When in the course of representation a lawyer is in possession of property in which two or more persons. . .claim interests, the lawyer shall keep the property separate until the dispute is resolved.  The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.  Lawyers shall cooperate as necessary to enable distribution of funds that are not in dispute."  Mo. R. Prof'l Conduct 4-1.15(e); *see also id*. at Cmt. (8) (providing the same language as contained in Pa. R. Prof'l Conduct 1.15 Cmt. (8)).

McCallister.  Indeed, Plaintiff specifically pleads the Missouri Rules of Professional Conduct as part of the basis of its claim.  (*See* Am. Compl. ¶ 42.)  At this stage of the litigation, we conclude that Plaintiff has stated a claim for breach of fiduciary duty.  The McCallister Defendants' Motion to dismiss Plaintiff's breach of fiduciary duty claim will be denied.

### 2. *Plaintiff's Claim for Attorneys' Fees*

The McCallister Defendants move to dismiss Plaintiff's request for attorneys' fees based upon the argument that they are not parties to any contract entitling Plaintiff to such fees.  As discussed more fully above, that is not the case.  For largely the same reasons that the McCallister Defendants are bound by the forum selection clause within the Purchase Agreement, they may too be bound by the attorneys' fees provision within the Agreement.  Therefore, the Motion to dismiss Plaintiff's request for attorneys' fees will be denied.

### IV. CONCLUSION

For the foregoing reasons, the McCallister Defendants' Motion to Dismiss will be granted in part and denied in part.  The Motion will be granted as to Plaintiff's claim of negligence and will be denied in all other aspects.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**